**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1681-23
            A-1896-23

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

STEPHANIE TASIN,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

TERRI BAIRD,

      Defendant-Appellant.

_____

      Argued October 17, 2024 – Decided December 5, 2024

      Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal Nos. 23-004 and 23-006.

Isabelle R. Strauss argued the cause for appellants.

Gregory F. Kotchick argued the cause for respondent (Durkin & Durkin, LLC, attorneys; Gregory F. Kotchick, of counsel and on the briefs).

PER CURIAM

In these companion cases, calendared back-to-back and consolidated for purposes of this opinion, defendants Stephanie Tasin and Terri Baird appeal from Law Division orders convicting them after a trial de novo of violations of three provisions of the East Hanover Township Municipal Code (Municipal Code) for their actions relating to stray cats. We reverse.

I.

The following facts were found by the municipal court after trial.

A.     Stephanie Tasin.

On September 14, 2021, at approximately 6:15 a.m., Carlo DiLizia, the Director of the East Hanover Township Health Department, was conducting surveillance in the Hanover Park Condominium development in response to complaints of stray cats. He observed Tasin exit a minivan and remove cat food from the rear of the vehicle. DiLizia saw Tasin put the cat food on cardboard

trays, which she placed throughout the public parking lot of the development. He observed approximately five stray cats gather and eat the food.

Tasin approached DiLizia and stated she was allowed to be in the area. DiLizia advised Tasin she was not permitted to feed stray cats in a public parking lot. After approximately ten to fifteen minutes, the cats finished eating. Tasin picked up the cardboard trays, placed them in her vehicle, and drove away.

DiLizia issued five summonses to Tasin, alleging violation of the following provisions of the Municipal Code:

(1) Section 173-24(A) ("No person owning, keeping or harboring any animal shall suffer or permit it to run at large upon the public streets or . . . in any other public place within the township.");

(2) Section 173-27 ("No person who shall own, keep or harbor an animal shall abandon such animal within the township.");

(3) Section 201-2(A) ("No person shall create, commit or maintain, or allow to be created, committed or maintained, any nuisance within the Township of East Hanover . . . .");

(4) Section 201-2(C) ("No person shall, within the Township of East Hanover, sweep, throw, place or otherwise deposit in or upon any sidewalk . . .

3

parking area or other public place any dirt, rubbish, paper, garbage . . . or refuse of any kind . . . .");

(5)  Section 201-2(D) ("No person shall throw, deposit or otherwise place upon any sidewalk . . . or other public place used for pedestrian travel any . . . substance which, when stepped upon, is liable to cause or does cause any person to slip or fall.").[1]

Tasin moved to dismiss the summonses prior to trial.  She argued the ordinances under which the summonses were issued expired in 2004.  In that year, the township adopted Section 44-1 of the Municipal Code, which abolished the Board of Health and replaced it with a Department of Health.  According to Section 44-1(B):

> Chapters 173 through 213 inclusive, of the [Municipal Code], as heretofore adopted by the Board of Health, are hereby readopted for a period not to exceed 120 days to allow the same to be amended, revised and supplemented to reflect the change in status of the public health agency.
>
> (1)  During the one-hundred-twenty-day period set forth above, the chapters designated shall remain in full force and effect; provided, however, that where the phrase "Board of Health" appears in the text, it shall be read to mean the "Health Officer" or "the Township" as appropriate to the context.

---

[1]  A sixth summons issued to Tasin was dismissed prior to trial.

A-1681-23

Sections 173-24(A), 173-27, 201-2(A), 201-2(C), and 201-2(D), under which Tasin was charged, were not readopted during the 120-day period established in Section 44-1. Thus, Tasin argued, those provisions expired, negating the summonses.

The municipal court issued an oral opinion denying the motion. The court found the purpose of Section 44-1(B) was to establish a 120-day period during which the municipality could delete or revise any reference to the Board of Health to reflect the establishment of the Department of Health and not to allow for the expiration of substantive provisions of the Municipal Code.

In a separate pretrial motion, Tasin argued Section 201-2(A) is facially unconstitutional due to vagueness because it does not sufficiently define a nuisance. The State opposed the motion, noting that Section 201-2(B) lists numerous examples of a nuisance, including "[d]epositing, maintaining or permitting the maintenance or accumulation of any . . . matter, material, substance or thing which serves as food for insects or rodents and to which they may have access . . . ." Section 201-2(B)(7).

Tasin also argued the penalties authorized by the Municipal Code for the charges against her exceed those authorized in N.J.S.A. 26:3-70, requiring dismissal of the summonses. The statute provides that a local Board of Health

A-1681-23

"may prescribe a penalty for the violation of any provision of a health ordinance or code. Such penalty shall not be more than $500.00 nor less than $5.00." N.J.S.A. 26:3-70.

Section 201-7 of the Municipal Code provides: "Any person who violates or neglects to comply with any provision of this chapter . . . shall, upon conviction, be subject to the penalties provided in § 164-14 of Chapter 164, General Provisions, Board of Health." In addition, Section 173-30.2(A) provides that "[a]ny person who violates . . . [§] 173-27 . . . shall, upon conviction, be subject to the penalties provided in § 164-14 . . . ." Section 164-14 provides:

> Unless a specific penalty is provided elsewhere in Part III of this Code, in state law or in other ordinances of the Board of Health for a particular violation, any person . . . who shall violate any provision of Part III of this Code . . . by doing any act prohibited or declared to be unlawful or a violation thereby . . . shall, upon conviction thereof, be punishable by a fine of not less than $100 nor more than $1,000 for each violation.

Thus, under four of the summonses, Tasin faced fines of not less than $100 nor more than $1,000 for each violation. These penalties exceed those authorized in N.J.S.A. 26:3-70.

With respect to the fifth summons, Section 173-30.2(B) provides that "[a]ny person who violates the provisions of . . . [§] 173-24 . . . shall, upon

6

conviction thereof, be punished by a fine for each violation of not less than $25 up to $2,500 or by imprisonment for a term not exceeding 10 days; or both." These penalties also exceed those authorized in N.J.S.A. 26:3-70.

The municipal court issued an oral opinion denying the motion. The court concluded Section 201-2(A), and the examples of nuisances set forth in Section 201-2(B), are sufficiently clear and unambiguous to put Tasin on notice of actions constituting a nuisance. In addition, the court concluded the purported invalidity of the penalty provisions does not render the remainder of the Municipal Code provisions invalid.

At trial, DiLizia recounted his observations of Tasin on September 14, 2021. After the State closed its case, Tasin moved for a judgment of acquittal regarding the alleged violation of Section 173-27. She argued the State failed to produce any evidence that she owned, kept, or harbored the cats on September 14, 2021 and, therefore, could not be found beyond a reasonable doubt to have abandoned those cats. She noted the record contained no testimony that she brought any cats to the development and argued she could not abandon an animal if she never caused the animal to be at the alleged place of abandonment.

The municipal court denied the motion in an oral decision. The court found the State produced sufficient evidence of "a harboring event" and of

A-1681-23

Tasin's leaving "the scene without retrieving the cats that she was harboring" to survive a motion for acquittal.

Theodore Tucker, who served as property manager of the development from 1998 to 2020, testified in defendant's case-in-chief. He stated that in 2008 he requested Tasin conduct a capture, spay, and return program for a large number of stray cats that were congregating at the development. According to Tucker, from 2008 to 2020, Tasin took numerous steps to reduce the stray cat population at the development, including arranging for the adoption of cats and paying for the spaying of cats to prevent future breeding. He testified that because of Tasin's efforts the number of stray cats at the development was reduced from approximately thirty cats to approximately three cats.

The municipal court issued an oral opinion convicting Tasin of all the charges. The court found:

> I believe [Tasin] did violate all of these ordinances. She had, by harboring these cats, and she did harbor them, because she provided . . . care and a premise[s] where the cats can return, on a regular basis, for comfort and food. But she had no business doing that. And she had no right to do that. She was not statutorily bound to do that.
>
> So, I'm satisfied that the State has sustained its burden of proof on all of these five summonses.

A-1681-23

For Tasin's violation of Section 173-24(A), the municipal court imposed a $2,500 fine and court costs of $33. The court merged the remaining convictions into the conviction for Section 173-24(A).

B.    Terri Baird.

On September 15, 2021, Kathy Nguyen, a registered environmental health specialist employed by East Hanover, was traveling on Murray Road in the township. She noticed two stray cats on the sidewalk. Nguyen parked her car and exited the vehicle. As she approached the cats, they scattered. Nguyen noticed a trap was situated partially on the public sidewalk. The trap's front door was tied open and a tray of cat food was at its opening. She also saw containers and piles of cat food on the sidewalk near the trap.

Nguyen testified the trap was improperly set because the door was prevented from closing when the trap was tripped. It could not, therefore, operate as a trap. In addition, to operate the trap appropriately, food is placed at the rear of the inside of the device, so that an animal will be caught inside when the front door closes. Nguyen testified that plastic was wrapped around the trap, effectively providing any animals in the trap with protection from inclement weather. Nguyen noticed a label on the trap that had written on it:

"Trapping momma cat and kittens. Please call Terri" followed by a cellphone number.

After she returned to her office, Nguyen, who was responsible for responding to open public records requests submitted to the Department of Health, noticed one such request. The request listed Baird's full name as the requestor and noted the same cellphone number that was on the note attached to the trap.

On September 17, 2021, Baird appeared at East Hanover township hall requesting the return of a trap belonging to her that had been removed from Murray Road. Nguyen informed Baird that she did not remove the trap and was not in possession of the device.

Nguyen issued five summonses to Baird, alleging violation of: Sections 173-24(A), 173-27, 201-2(A), 201-2(C), and 201-2(D) of the Municipal Code.[2]

Baird, who was represented by the same counsel as Tasin, filed a pretrial motion raising the same arguments concerning the expiration of the relevant provisions of the Municipal Code, vagueness, and unauthorized penalties. The municipal court denied the motions for the same reasons it denied Tasin's

---

[2] A sixth summons issued to Baird was dismissed prior to trial.

motions, except the court also concluded that "there is some independence on the part of the city to impose fines in excess of that statutory requirement."

Nguyen testified at trial, recounting her observations on September 15, 2021. During cross-examination, she admitted she did not see Baird place the trap, cat food, and containers on Murray Road. She also conceded the trap was placed under a guardrail and was only partially on the sidewalk.

The municipal court issued an oral decision finding Baird not guilty of violating Sections 201-2(C) and 201-2(D). The court found the State did not prove beyond a reasonable doubt that Baird placed cat food on the sidewalk.

The court, however, found Baird guilty of the remaining charges. The court found the State proved beyond a reasonable doubt that Baird placed the trap in a public area and that it was her intent to harbor cats in the trap, which the court found was "really . . . a haven for stray cats."

For violation of Section 173-24(A), the court imposed a $2,500 fine and court costs of $33. For violation of Section 173-27, the court imposed a $1,000 fine and court costs of $33 concurrent to the fine imposed for violation of Section 173-24(A). For violation of Section 201-2(A), the court imposed a $2,500 fine and court costs of $33 concurrent to the fine imposed for violation of Section 173-24(A).

Defendants appealed their convictions to the Law Division. They raised the same pretrial arguments made to the municipal court. In addition, they argued the State had not proven beyond a reasonable doubt that they violated any of the charged provisions of the Municipal Code.

On January 17, 2024, the Law Division issued a written opinion finding Tasin guilty of violating Sections 173-24(A), 173-27, and 201-2(A). The court explained that it

> finds [Tasin] harbored the stray cats by regularly feeding them and caring for them. Further, [Tasin] permitted the stray cats to run at large after she [was] done feeding them. [Tasin's] conduct took place in a public area. This court finds leaving the stray cats on the street and driving off is a form of abandonment.

The court, however, found the State had not proven beyond a reasonable doubt that Tasin violated Sections 201-2(C) and 201-2(D). The court found:

> On September 14, 2021[, Tasin] was seen feeding the cats then picking up the remaining food and driving off leaving the cats behind. However, [Tasin] did not deposit any garbage or litter in the public area. While [Tasin] placed cardboard boxes on the sidewalk with food, she did pick up the cardboard fifteen minutes later and left nothing behind. This court finds that [Tasin] did not deposit any food or substance that would cause a person to fall. There was no evidence or testimony that [Tasin] left anything behind when she drove away. Accordingly, this court does not find that [Tasin] deposited any garbage or food or substance in the public area.

12

The court, therefore, acquitted Tasin of those charges.

The court merged two of the convictions into the conviction for violating Section 173-24(A) and imposed a fine of $1,500 and $33 in court costs. Although the court summarized defendant's arguments regarding expiration of the relevant provisions of the Municipal Code, vagueness, and unauthorized penalties, it did not issue an opinion on any of those issues.

On January 23, 2024, the Law Division issued a written opinion finding Baird guilty of violating Sections 173-24(A), 173-27, and 201-2(A). The court explained that

> the State has provided sufficient evidence to link the trap placed on Murray [Road] to [Baird]. The State has proven beyond a reasonable doubt that [Baird] placed the trap on Murray [Road]. This court further finds [Baird] was harboring stray cats in the Township by placing a trap with plastic wrap around it and tying the door open. [Baird's] conduct took place in a public area. This court finds that altering the trap to not capture the cats and allowing them to run at large is a form of abandonment.

The court merged two of the convictions into the conviction for violating Section 173-24(A) and imposed a fine of $1,500 and $33 in court costs.

These appeals followed. Tasin raises the following arguments:

13

POINT I

EACH OF THE FIVE SUMMONSES THE CONVICTIONS OF WHICH FORM THE BASIS OF THIS APPEAL ALLEGE A VIOLATION OF EITHER CHAPTER 173 OR CHAPTER 201 OF THE CODE OF THE TOWNSHIP OF EAST HANOVER [THAT] CEASED TO BE VIABLE DUE TO THE SUNSET PROVISION CONTAINED IN CHAPTER 44 OF THE CODE.

POINT II

[THE] SUMMONSE[S] . . . EACH CHARGE[] A VIOLATION OF AN EAST HANOVER BOARD OF HEALTH ORDINANCE WHICH CONTAINS A PENALTY PROVISION WHICH IS VOID[,] RENDERING THE ORDINANCE UNENFORCEABLE.

POINT III

A PERSON OF REASONABLE INTELLIGENCE WOULD NOT KNOW THAT SPAYING/ NEUTERING AND PROVIDING DAILY FEEDING OF COLONY CATS CONSTITUTES CRIMINAL ABANDONMENT.

POINT IV

A PERSON OF REASONABLE INTELLIGENCE WOULD NOT KNOW THAT SPAYING/ NEUTERING AND REDUCING THE POPULATION OF FERAL (COMMUNITY) CATS ON CONDOMINIUM PROPERTY AT THE BEHEST OF THE CONDOMINIUM BOARD AND MANAGEMENT VIOLATED AN ORDINANCE

PROHIBITING ALLOWING CATS TO RUN AT LARGE.

POINT V

[THE] SUMMONS[] . . . CHARGES A VIOLATION OF EAST HANOVER CODE 201-2[(A),] THE LANGUAGE OF WHICH HAS BEEN DECLARED VOID FOR VAGUENESS.

Baird raises the following arguments:

POINT I

THE STATE FAILED TO PROVE THAT . . . BAIRD PLACED A TRAP ON MURRAY ROAD – A REQUIRED ELEMENT OF . . . EACH OF THE VIOLATIONS OF WHICH THE COURT CONVICTED HER.

POINT II

EACH OF THE FIVE SUMMONSES THE CONVICTIONS OF WHICH FORM THE BASIS OF THIS APPEAL ALLEGE A VIOLATION OF EITHER CHAPTER 173 OR CHAPTER 201 OF THE CODE OF THE TOWNSHIP OF EAST HANOVER [THAT] CEASED TO BE VIABLE DUE TO THE SUNSET PROVISION CONTAINED IN CHAPTER 44 OF THE CODE.

POINT III

[THE] COMPLAINTS (SIC) . . . EACH CHARGE[] A VIOLATION OF AN EAST HANOVER BOARD OF HEALTH ORDINANCE WHICH CONTAINS A PENALTY PROVISION WHICH IS VOID[,] THUS

15

RENDERING THE ORDINANCE UNENFORCEABLE.

POINT IV

[THE] SUMMONS . . . CHARGES A VIOLATION OF EAST HANOVER CODE 201-2[(A),] THE LANGUAGE OF WHICH HAS BEEN DECLARED VOID FOR VAGUENESS.

POINT V

EAST HANOVER ORDINANCE[S] 173-24(A) AND 173-27 ARE VOID FOR VAGUENESS AS A PERSON OF REASONABLE INTELLIGENCE WOULD NOT FATHOM THAT TRAPPING, FEEDING OR SHELTERING STRAY CATS CONSTITUTES CRIMINAL ABANDONMENT OR VIOLATES A LAW PROHIBITING THE PERMITTING OF CATS TO ROAM AT LARGE.

II.

On appeal from a municipal court to the Law Division, the review of a conviction is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. State v. Robertson, 228 N.J. 138, 147 (2017).

In our review of the Law Division's judgment, we do not, however, independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). "Our standard of review of a de novo verdict after a municipal court trial is to

determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole." State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (internal quotations marks and citation omitted). "[A]ppellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470). But "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We agree with defendants' argument that the provisions under which they were sentenced prescribe penalties not authorized by statute. We therefore conclude defendants' convictions are invalid.

We are guided in our analysis by our holding in State v. Laurel Mills Sewerage Corp., 46 N.J. Super. 331 (App. Div. 1957). In that matter, the defendant was found guilty of violating a provision of a municipal zoning ordinance. Id. at 332-33. A penalty of $200, plus costs, was imposed. Id. at 333. The conviction and penalties were affirmed on appeal to the county court. Ibid.

On appeal, we considered whether the defendant's conviction was invalid because the ordinance under which it was sentenced permitted a penalty exceeding the amount the municipality was authorized to impose by statute. The authority for imposition of penalties by municipalities generally is found in N.J.S.A. 40:49-5. At the time Laurel Mills was decided, that statute provided:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, either by imprisonment in the county jail . . . , or by a fine not exceeding two hundred dollars, or both. The magistrate before whom any person is convicted of violating any ordinance of a municipality, shall have power to impose any fine or term of imprisonment not exceeding the maximum fixed in such ordinance.
>
> [Ibid. (quoting N.J.S.A. 40:49-5 (1957)).]

The ordinance under which the defendant was fined, however, provided:

> If any building or structure shall be erected, constructed, extended, or added to in violation of this Ordinance . . . the owner shall be subject to a fine of not more than one thousand ($1000.00) [d]ollars and not less than [t]en ($10.00) [d]ollars and/or imprisonment not to exceed sixty (60) days.
>
> [Ibid. (quoting Stratford Borough, N.J., Municipal Code § 1202 (1957)).]

We held that even though the defendant was fined an amount within the range of penalties authorized by N.J.S.A. 40:49-5, his conviction was invalid

because the ordinance under which the penalty was imposed was not authorized by that statute. We explained,

> It is fundamental that, to the extent authorized by the Legislature, a municipality may enact ordinances and provide against their violation by penalties. Municipalities are agencies of government for the local administration of the legislative intention and policy. The amount or limitation of a penalty imposed by an ordinance must comply with the statutory authority. If a municipality should provide in an ordinance a penalty not authorized by statute, a local law would be framed which the legislative power has not expressed its intention to have enacted. Where the Legislature has directed the manner in which ordinances are to be enforced or the penalty to be imposed for their violation, it thereby negatives the right of the municipality to provide for any other penalty.
>
> [Id. at 334-35.]

We invalidated the conviction even though the ordinance at issue contained a severability clause. Id. at 335.

Ten years later, we reached the same conclusion in Borough of Verona v. Shalit, 96 N.J. Super. 20 (App. Div. 1967). There, Shalit was found guilty in municipal court for violating an environmental ordinance adopted by the borough's Board of Health and fined $100. Id. at 21. The ordinance was adopted pursuant to N.J.S.A. 26:3-70, the statute at issue in the present appeal. Id. at 22-23. At the time, N.J.S.A. 26:3-70 provided that "[t]he local board may prescribe

a penalty for the violation of any provision of a health ordinance or code.  Such penalty shall not be more than one hundred dollars nor less than two dollars."  Id. at 23 (quoting N.J.S.A. 26:3-70 (1967)).  The ordinance under which Shalit was fined, however, fixed the penalty at $200.  Id. at 24.

Before this court, the borough admitted that the penalty provision of the ordinance was invalid, but argued that since the penalty imposed on Shalit was $100, an amount authorized by N.J.S.A. 26:3-70, the penalty was valid.  Ibid.  We disagreed, holding that "it is the ordinance which must fix the penalty.  The maximum in the ordinance being invalid, the penalty clause is totally void."  Ibid.  We continued, "[a]lthough the invalidity of a penalty clause does not necessarily invalidate all of an ordinance, it does make the ordinance unenforceable until the penalty clause is validly amended."  Ibid. (citations omitted).

The sections of the Municipal Code authorizing the penalties imposed on Tasin and Baird suffer from the same deficiencies that resulted in the invalidation of the convictions in Laurel Mills and Shalit.  N.J.S.A. 26:3-70 authorizes municipalities to prescribe a penalty for violation of health ordinances of not more than $500 nor less than $5.  Section 164-14 of the Municipal Code, however, prescribes a penalty of not more than $1,000 nor less

20

than $100 for violations of Sections 173-27, 201-2(A), (C), and (D).  In addition, Section 173-30.2(B) prescribes a penalty of not more than $2,500 nor less than $25 for violations of Section 173-24(A).  The penalties prescribed by the Municipal Code exceed in every respect the penalties municipalities are authorized to prescribe by N.J.S.A. 26:3-70.

East Hanover adopted ordinances prescribing penalties the Legislature "has not expressed its intention to have enacted."  Laurel Mills, 46 N.J. Super. at 334.  "The penalty provided in the ordinance, being greater than is permitted by statute, is void."  Id. at 335.  Defendants' convictions, as a result, must be reversed.

We are not persuaded by the State's argument that the invalid penalty provisions in the ordinances can be severed from the relevant sections of the Municipal Code.  In support of its position, the State relies on the holding in State v. McCormack Terminal, Inc., 191 N.J. Super. 48 (App. Div. 1983).  In that matter, the defendant was convicted of violating a municipal ordinance relating to air pollution.  Id. at 49.  A $500 penalty was imposed.  Ibid.  The ordinance under which the defendant was fined prescribed a penalty of "no more than $500.00, nor less than $5.00."  Id. at 51 (quoting South Amboy Borough, N.J., Municipal Code § 10.1 (1983)).

We found the ordinance to be in conflict with N.J.S.A. 40:49-5, which at the time defendant was fined provided in relevant part:

> The governing body may prescribe penalties for the violation of ordinances it may have authority to pass, either by imprisonment in the county jail . . . or by a fine not exceeding $500.00 . . . , or both. The court before which any person is convicted of violating any ordinance of a municipality, shall have power to impose <u>any fine</u> or term of imprisonment not exceeding the maximum fixed in such ordinance.
>
> [<u>Id.</u> at 51, n. 4 (quoting N.J.S.A. 40:49-5 (1983)).]

We had "consistently held that N.J.S.A. 40:49-5 prohibits municipalities from enacting minimum fines which would deprive judges of their statutory discretion to impose 'any fine.'" <u>Id.</u> at 51 (citing <u>State v. Hatco Chemical Co.</u>, 96 N.J. Super. 238, 240-42 (App. Div. 1967); <u>Studerus Oil Co., Inc. v. City of Jersey City</u>, 128 N.J.L. 286, 292 (Sup. Ct. 1942); <u>Pfister Chemical Co., Inc. v. Romano</u>, 15 N.J. Misc. 71, 72 (Sup. Ct. 1937)) (footnote omitted).[3]

The defendant, citing <u>Shalit</u>, argued "since the $5 minimum fine is invalid, the entire penalty clause is void and the ordinance is therefore unenforceable." <u>Ibid.</u> We declined to adopt that position, concluding instead that the minimum

---

[3] The Legislature subsequently amended N.J.S.A. 40:49-5 to provide that "[t]he court before which any person is convicted of violating any ordinance of a municipality shall have power to impose any fine . . . not less than the minimum and not exceeding the maximum fixed in such ordinance." <u>See</u> <u>L.</u> 1983, <u>c.</u> 410.

fine was severable from the ordinance because it was "inconceivable that the South Amboy governing body would have preferred sacrificing its entire comprehensive anti-pollution code to losing the guarantee of a minimum $5 fine." Id. at 52. We observed that "removal of the $5 minimum fine is barely perceptible. The remaining portion of the penalty clause is fully operable and conforms to statutory authority." Id. at 53.

We also rejected the defendant's argument that our holding in Laurel Mills precluded severance of the minimum fine from South Amboy's ordinance. We noted that "[i]n Laurel Mills the penalty clause suffered from two infirmities. It provided for a minimum fine of $10 and a maximum of $1,000 even though at the time the statute authorized a maximum of only $200." Id. at 52. We noted that:

> Despite a severability clause in the ordinance, [we] held that '[t]he penalty provided in the ordinance, being greater than is permitted by statute, is void.' The opinion reproduces the ordinance, but makes no other reference to the minimum fine provision. It appears to us that the court was exclusively concerned with the excessive maximum fine feature of the ordinance, concluding that severance would leave the ordinance unenforceable because of the absence of any fixed maximum. We need not consider whether in such a case the statutory maximum may be read into the ordinance.
>
> [Id. at 52-53.]

We see no basis to depart from the reasoning we applied in McCormack Terminal. The penalty provisions of the Municipal Code at issue here each contain both a maximum penalty and a minimum penalty that exceed the statutory authorization in N.J.S.A. 26:3-70. Were we to sever both the maximum penalty and minimum penalty from the ordinances, there would be no prescribed penalties for their violation. We decline the State's invitation to perform that judicial surgery and, having created a void in the ordinances, to presume the East Hanover governing body intended to enact penalty provisions that complied with N.J.S.A. 26:3-70, and insert into the ordinances maximum and minimum penalties authorized by the Legislature. Courts will not intrude into the legislative process to rewrite an invalid ordinance.

In light of our decision with respect to the penalty provisions of the ordinances, we need not address the remaining arguments raised by defendants.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1681-23